UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
YESENIA RUIZ and FERNANDO )
DORANTES, on behalf of themselves and )    Cause No. C14-1283RSL
all others similarly situated, )
                                       )
                 Plaintiff,            )
         v.                            )
                                       )    ORDER GRANTING DEFENDANTS'
DARIGOLD, INC./NORTHWEST DAIRY )            MOTION TO DISMISS
ASSOCIATION, *et al.*,                 )
                                       )
                 Defendants.           )
_____)

This matter comes before the Court on "Defendants Darigold, Inc. and Northwest Dairy Association's Notice of Motion and Motion to Dismiss" (Dkt. # 21) and defendants' "Request for Judicial Notice in Support of Their Motion to Dismiss" (Dkt. # 21-2). Plaintiffs allege that defendant Darigold, a marketing and dairy processing entity owned by the over 500 farmers who make up defendant Northwest Dairy Association, misrepresented the conditions under which its products were produced and that plaintiffs relied on false assurances of ethical treatment for cows and workers when they chose to purchase Darigold products. Plaintiffs have alleged eleven causes of action under California, Oregon, and Washington law and seek reimbursement for all monies paid for such products, plus exemplary damages and injunctive relief.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

In the context of a motion to dismiss, the Court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). Nevertheless, Ninth Circuit authority allows the Court to consider documents referenced extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003). Because the 2010 Corporate Social Responsibility ("CSR") Report was attached to plaintiffs' complaint and forms the basis of their claims, that document will be considered in determining whether plaintiffs have stated a viable claim. Defendants have not, however, shown that a report issued two years after the original CSR is an integral part of plaintiffs' complaint or is the type of document that is judicially noticed.[1] While the June 13, 2011, order in Martinez v. Ruby Ridge Dairy, LLC, Civ. No. 09-2-50913-4 (Franklin County Sup. Ct.), can be judicially noticed, the Court finds that it is only marginally relevant to the issues presented and that any probative value in the context of this motion is outweighed by the risk of waste and delay involved in debating the merits of the Ruby Ridge claims. The Court declines to convert defendants' motion into a motion for summary judgment and has therefore not considered matters other than the allegations of the complaint and the 2010 CSR.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint, taken as true, sufficiently state a claim for relief that is "plausible" on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must

---

[1] Pursuant to Fed. R. Ev. 201, the Court may take judicial notice of facts that are "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                              -2-

> rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). To the extent plaintiffs' claims rely on conclusory statements, they are not entitled to the presumption of truth and will be ignored when determining whether a claim is plausible. Chavez v. U.S., 683 F.3d 1102, 1108 (9th Cir. 2012). If, after discounting conclusory statements and consulting judicial experience and common sense, the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to give rise to a plausible claim for relief, dismissal is appropriate. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Hartmann v. Cal. Dep't of Corr. and Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).

Having reviewed the complaint, the 2010 CSR Report, and the submissions by the parties, the Court finds as follows:

## BACKGROUND

Darigold's 2010 Corporate Social Responsibility Report: Nourishing Our Future was an assessment of the company's "current performance in the economic, environmental, and social areas that matter most to our stakeholders and to us as an organization." 2010 CSR (Dkt. # 1-2) at 2. The report addresses such disparate topics as Darigold's member-owned structure and history, economic performance, energy and water consumption, food safety, animal well-being, community impacts, and labor practices. The motive for generating the report was not wholly altruistic: Darigold recognized that its customers and animal rights groups were interested in how its milk was produced, and it hoped to stave off regulatory and media actions by highlighting the company's social consciousness. See 2010 CSR (Dkt. # 1-2) at 14-15. The report covers data from the calendar year 2009 (unless otherwise noted), and contains a number

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -3-

of self-congratulatory statements such as "Northwest dairy farmers are among the best in the world" and Darigold "is in the business of supplying products that contribute significantly to consumers' nutrition and health." 2010 CSR (Dkt. # 1-2) at 27 and 49. The report also calls out areas and opportunities for improvement, such as the need to establish a comprehensive animal well-being assessment tool for farmers and to implement a comprehensive greenhouse gas management strategy. 2010 CSR (Dkt. # 1-2) at 28 and 34. In closing, Darigold noted:

> In general, our performance reflects steady, and sometimes exceptional improvements in recent years. Compared to our competitors or to our own historical benchmarks, we can all feel proud that we are performing reasonably well in most areas. We are acutely aware, however, that we are not yet up to the performance standards of the most advanced companies in the world today with regard to sustainability or CSR. Additionally, we are behind where we intend to be in several important areas for us. Now that we have formalized our understanding of our current baseline performance, our next step will be to establish specific targets for improvement and then to drive toward achieving them.

2010 CSR (Dkt. # 1-2) at 58.

Plaintiffs Yesenia Ruiz and Fernando Dorantes read the 2010 CSR at some point after it was first published and interpreted the report as a statement "that the company's member dairies treated their workers and cows well" and/or that Darigold "treats its workers and cows with respect and in compliance with the law." Complaint (Dkt. # 1) at ¶¶ 10-11. Plaintiffs allege that they relied on those statements when choosing to purchase (or, for Ms. Ruiz, to continue to purchase) Darigold products. Id. In early 2014, plaintiffs learned that workers at one of Darigold's member dairies had sued their employer for violations of Washington's wage and labor laws. Id. Ms. Ruiz also alleges that she discovered that unspecified "questions have been raised about the treatment of workers and animals at Darigold member facilities." Complaint (Dkt. # 1) at ¶ 10. Both plaintiffs stopped buying Darigold products and allege that they would not have purchased them had Darigold been honest about the conditions in which its

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                                    -4-

products were produced. Complaint (Dkt. # 1) at ¶¶ 10-11.[2] Plaintiffs filed this action in May 2014 alleging the following causes of action:

(1) Violation of California's Consumer Legal Remedies Act;

(2) Violation of California's Unfair Competition Law;

(3) Fraud by Concealment under California law;

(4) Unjust Enrichment under California law;

(5) Violation of California's False Advertising Law;

(6) Violation of Washington's Consumer Protection Act;

(7) Violation of Oregon's Unlawful Trade Practices Act;

(8) Fraudulent Concealment under Washington law;

(9) Unjust Enrichment under Washington law;

(10) Fraudulent Concealment under Oregon law; and

(11) Unjust Enrichment under Oregon law.

**DISCUSSION**

**A. California Consumer Protection Laws**

The parties agree that California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL") prohibit promotional materials that misrepresent or omit facts in a way that is likely to mislead or deceive a reasonable consumer. Motion (Dkt. # 21) at 9; Opposition (Dkt. # 29) at 11. The gist of plaintiffs' complaint is that the 2010 CSR misled consumers into believing that (a) all Darigold employees and all workers at the 500+ member dairies were treated well, with respect, and in full compliance with the law and (b) every cow that contributed milk to Darigold for processing was

---

[2] The complaint also alleges that racist comments, threats toward workers, and the milking of sick or injured cows occurred at one or more of Darigold's member dairies. Complaint (Dkt. # 1) at ¶¶ 12-13. It is not clear when these events took place, and there is no indication that they had any impact on plaintiffs' actions or reactions in this case.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS              -5-

healthy. A fair reading of the 2010 CSR would not support such beliefs, however, and a reasonable consumer reading the report would not be misled in the way plaintiffs allege.

As a general matter, the 2010 CSR presents a baseline assessment of Darigold's operations on a number of parameters, noting areas of success and areas where improvement is needed. The overall impression left by the report is that Darigold is fairly happy with its performance when compared to other dairy operations in the United States and its own historical practices, but acknowledges that it can do better on almost every measure. In order to construe the 2010 CSR as a guarantee of perfection in the areas of worker rights and animal health, plaintiffs ignore the vast majority of the report, its purpose, and its structure in order to focus on a handful of sentences or, in some cases, phrases. Such an interpretive practice is, itself, unreasonable. While there may be one or two statements in the 60-page report in which Darigold expresses satisfaction with its performance and fails to explicitly incorporate by reference the caveats and problems mentioned elsewhere, a reasonable consumer would not be deceived or misled into believing that Darigold or its member farms had a perfect track record on worker rights or animal health.

Even if the Court considers the ten sentences or phrases on which plaintiffs' claims of misrepresentation and omission rely, when read in context they reflect nuanced assessments of the current situation, are aspirational statements, or have not been shown to be false in any material respect. The first four statements with which plaintiffs take issue are on pages 14-15 of the 2010 CSR. Complaint (Dkt. # 1) at ¶ 18. The first statement is actually a sentence fragment: "Adopting proactive measures that protect and enhance animal well-being and sustainable farming, and that highlight the world-class husbandry of our NDA producers." 2010 CSR (Dkt. # 1-2) at 15. This phrase is included under the heading "Darigold Initiatives and Opportunities." It is clear from the context that Darigold is identifying actions to be taken in an effort to address challenges arising from negative publicity and/or consumer demands. The statement is forward-

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -6-

looking and cannot be reasonably interpreted as a promise that Darigold already had in place measures to protect and enhance animal well-being or that such measures had been (or would be) 100% effective.  The only potential statement regarding an existing fact is that the NDA farmers utilize world-class husbandry techniques.  Assuming a term like "world-class" is capable of being proven or disproven, plaintiffs have not alleged any facts suggesting that Darigold's farmers fall below that standard or have otherwise been deficient in animal husbandry (generally defined as the care and management of domesticated animals to develop genetic qualities and behaviors that are advantageous).  Plaintiffs have not adequately alleged a misrepresentation.

The next two statements on which plaintiffs rely are "Our farmers' dedication to providing high quality milk begins with world-class animal care.  Our producers care for their herds by providing a nutritious diet, good medical care and healthy living conditions."  2010 CSR (Dkt. # 1-2) at 14.  Plaintiffs do not challenge the assertion that the NDA farmers have as their goal the provision of high quality milk.  Rather, they provide pictures of one or more cows with raw spots on their utters and a picture of a cow with blood covering its leg to show that the NDA producers do not provide "world-class animal care" and/or "healthy living conditions."  There is no information regarding when those pictures were taken, the cause of the conditions shown, or any treatments provided.  Cows that are given a nutritious diet and healthy living conditions may nevertheless suffer injury or illness.  If that were not the case, the mention of medical care – good or otherwise – would be unnecessary.  To the extent plaintiffs interpreted Darigold's statement as a promise that its members' cows were uniformly and perpetually healthy, such an interpretation was unreasonable.[3]

---

[3] The other statements regarding the level of care given to the animals are even less likely to deceive or mislead a reasonable consumer.  Plaintiffs take issue with statements such as "the performance level of NDA farmers are excellent" and that they are "currently among the most responsible in the nation with regard to animal well-being."  2010 CSR (Dkt. # 1-2) at 28.  The surrounding paragraphs reveal that this information was gleaned from survey responses that had been

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                     -7-

The fourth statement to which plaintiffs object is that Darigold follows "a rigorous quality assurance program to ensure food safety and the highest quality products for our customer." 2010 CSR (Dkt. # 1-2) at 14. Plaintiffs do not allege any facts or provide any evidence suggesting that Darigold does not have a quality assurance program or that its products are unsafe or subpar.[4]

Plaintiffs also identify three alleged misstatements regarding the working environment at Darigold and/or its member farms. In the section on environmental stewardship, Darigold states "Clean water is essential for drinking" (2010 CSR (Dkt. # 1-2) at 30)), which plaintiffs interpret as "strongly implying that Darigold and its members provide dairy workers with clean drinking water" (Complaint (Dkt. # 1) at ¶ 19). Such an interpretation is patently unreasonable given the context. The sentence, in its entirety, states, "Clean water is essential for drinking, for aquatic animal habitat, and for recreational and industrial use." The remainder of the paragraph explains what Darigold and its member farms are doing to keep wastes out of waterways, and the broader section is dedicated to stewardship of the natural resources surrounding member farms and Darigold's processing facilities. The section has nothing to do with working conditions on the member farms or the provision of services to employees: if plaintiffs interpreted it that way, they were simply mistaken.

---

submitted by only 40% of the NDA farms. Thus, while 40% of the farmers reported very good things about the state of their herds, 60% of the farmers failed to respond or provide any information regarding their animals' well-being. In such circumstances, it would be unreasonable to interpret the summary of responses as an assurance that 100% of the cows contributing milk to Darigold for processing were healthy. A fair reading of the section also shows that, although NDA farmers compared favorably with their peers nationwide, they were not perfect. The report acknowledges that improvements could be made and anticipates a second round of assessments using tools that Darigold was then developing to ensure that its farmers continued to make progress in the area of animal well-being.

[4] Nor have plaintiffs shown that the statement "Food safety is of paramount importance to Darigold" is a misrepresentation or otherwise likely to deceive a reasonable consumer. 2010 CSR (Dkt. # 1-2) at 38.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -8-

In a section of the report about "Caring for Our Employees," plaintiffs point to a subtitle stating "Equal Opportunity and Non-Discrimination" and a statement that "Our employment policies and practices demonstrate our commitment to fair treatment of all employees wherever we operate.  At a minimum, we comply with local, state and federal laws, but our policies cultivate a higher standard."  2010 CSR (Dkt. # 1-2) at 54.  Plaintiffs assert that these statements are false because workers at a member farm have filed a lawsuit alleging wage and labor law violations.  This section, however, relates to employees of Darigold – those individuals who process milk and generate value-added products at Darigold's plants – not to the employees of the 500+ dairies that are members of NDA.  As stated elsewhere in the report, the member farms are owners, not employees, of Darigold.  There is no indication that Darigold hires the farm workers, controls the conditions of their employment, or otherwise considers them employees.  The various topics discussed and information provided in the "Caring for Our Employees" section, such as safety assessments and training at Darigold's processing plants, the benefits packages available to its employees, Darigold's outreach to the eleven communities in which its plants are located, the number of employees, and the complaint and safety data, all revolve around Darigold's experiences as an employer and have nothing to do with the working conditions on the member farms.  Plaintiffs could not reasonably have interpreted this section as relating to the farmer owners or their employees.  Nor could Darigold's statements be reasonably construed as a representation that each and every employee, much less farm worker, is treated in a non-discriminatory, respectful manner, especially in light of its disclosures regarding prior complaints against the company.[5]  The fact that employees at Ruby Ridge filed suit alleging wage and labor law violations does not give rise to an inference of misrepresentation or an

---

[5] The section specifically acknowledges that Darigold has been accused of race and disability discrimination on four occasions since 2007.  In light of this acknowledgment, plaintiffs could not have reasonably understood the section as a promise that Darigold employees uniformly experience equal opportunity and a non-discriminatory environment.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                            -9-

actionable omission.

Plaintiffs have failed to identify a misrepresentation or omission of fact that is likely to deceive a reasonable consumer. Their CLRA, UCL, and FAL claims therefore fail as a matter of law.

**B. Fraudulent Concealment Claims**

Plaintiffs allege that, having decided to publish information regarding its operations in the 2010 CSR, Darigold became obligated to disclose all negative information so as "not to misrepresent the nature of its operations." Complaint (Dkt. # 1) at ¶¶ 59 and 89. In particular, plaintiffs allege that defendants should have disclosed the Ruby Ridge litigation as well as any and all complaints regarding the working conditions on its member farms and/or the well-being of the animals. A failure to disclose a material fact is fraudulent only if there is a duty to disclose, however. See Stieneke v. Russi, 145 Wn. App. 544, 560 (2008). As discussed above, the 2010 CSR did not convey the impression, much less state outright, that all animals and workers on the member farms were happy and/or healthy or that there were no complaints regarding the conditions on any of the 500+ member farms. A description of each and every complaint levied against a member farm or a report of every illness or injury suffered by the cows was therefore not necessary to correct a representation made by defendants. A reasonable consumer reading the report would not expect defendants to catalogue every complaint received or problem encountered: such a litany would be out of context given the high-level nature of the report and the generalized statements regarding both successes and deficiencies. Having failed to identify any other source of the supposed duty to disclose, plaintiffs' fraudulent concealment claims fail as a matter of law.

**C. Unjust Enrichment Claims**

The Court declines to decide (1) whether a seller is unjustly enriched when it accepts payment for a product that does not have all the characteristics for which the purchaser

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -10-

bargained or (2) whether an independent cause of action for unjust enrichment/restitution exists under California law. In the circumstances presented here, the unjust enrichment claims fail as a matter of law even if both questions are answered in plaintiffs' favor. A reasonable consumer would not have interpreted the 2010 CSR as a promise that there were no problems at any of the 500+ dairies that make up the NDA or that Darigold's products were generated by only healthy, happy, respected workers and cows. The Court finds that, as a matter of law, plaintiffs' payment for the milk products consumed and Darigold's retention of that money were not unjust.

**D.  Washington Consumer Protection Act ("CPA") Claim**

Because plaintiffs have failed to allege a misrepresentation or omission of material fact, they cannot satisfy the first element of a CPA claim. Absent an unfair or deceptive act or practice, the CPA claim fails as a matter of law.

**E.  Oregon Unlawful Trade Practices Act ("UTPA") Claim**

Plaintiffs allege that defendants violated the UTPA by "us[ing] deceptive representations or designations of geographic origin in connection with real estate, goods or services" (O.R.S. § 646.608(1)(d)), "represent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have . . ." (O.R.S. § 646.608(1)(e)), "represent[ing] that real estate, goods or services are of a particular standard, quality, or grade . . . if the real estate, goods or services are of another" (O.R.S. § 646.608(1)(g)), "fail[ing] to disclose any known material defect or material nonconformity" (O.R.S. § 646.608(1)(t)), and "engag[ing] in any other unfair or deceptive conduct in trade or commerce" (O.R.S. § 646.608(1)(u)). Plaintiffs have not alleged any representations regarding the geographic origins of Darigold's products, much less that such representations are false. Their claim under O.R.S. § 646.608(1)(d) therefore fails. As for the other alleged violations of UTPA, even if the Court assumes that statements regarding conditions at the member dairies relate to the characteristics or quality of the milk products sold

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                            -11-

by Darigold, plaintiffs have failed to allege a misrepresentation or omission regarding those conditions, characteristics, or qualities and have not alleged unfair or deceptive conduct. The UTPA claim fails as a matter of law.

**F.  Leave to Amend**

When a complaint is dismissed for failure to state a claim under Rule 12(b)(6), leave to amend is generally appropriate unless it is clear that plaintiffs will be unable to allege any facts, consistent with the original complaint, that would make the claim plausible. See Johnson v. Lucent Tech., Inc., 653 F.3d 1000, 1012 (9th Cir. 2011). Although plaintiffs request an opportunity to amend if their claims are dismissed, they do not identify any additional facts that could be alleged to overcome the fact that the 2010 CSR cannot reasonably be read as a representation that all workers and animals involved in the production of Darigold's products are treated well, with respect, and in compliance with all laws. Absent some indication of what additional facts plaintiffs might plead to overcome this hurdle, it is very difficult to determine whether an amended pleading would fare any better than the current complaint. The Court is therefore loathe to grant leave to amend outright. Instead, plaintiffs will be given thirty days in which to file a motion for leave to amend that is supported by a proposed amended pleading. If a motion for leave to amend is not filed in the time provided, judgment will be entered in favor of defendants and against plaintiffs.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss (Dkt. # 21) is GRANTED. If plaintiffs believe they can, consistent with their Rule 11 obligations, amend the complaint to remedy the pleading and legal deficiencies identified above, they may file a motion to amend within thirty days of this Order and attach a proposed pleading for the Court's consideration.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                -12-

Dated this 31st day of October, 2014.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS    -13-